## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

THOR IAN GENSINGER,

      Plaintiff,

v.                                                            Case No.  3:18-cv-1628-LC/MJF

JAMES K. BAZZELLE, *et al*.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Thor Ian Gensinger, a prisoner proceeding *pro se*, brought this action under 42 U.S.C. § 1983, claiming that six correctional officers violated his constitutional rights. Specifically, he claims that five officers used excessive force on him in violation of the Eighth Amendment; two of the five officers denied him due process when they issued him "false" disciplinary reports; and a sixth correctional officer retaliated against him in violation of the First Amendment. The six Defendants have moved for summary judgment. (Doc. 38). Gensinger responded and submitted an affidavit in opposition. (Doc. 47). For the reasons set forth below, the undersigned recommends that the District Court grant in part and deny in part Defendants' motion for summary judgment.[1]

_____

[1] This case was referred to the undersigned to address preliminary matters and to

## I.    Background

### A.    Overview of Plaintiff's Claims

In January 2018, Plaintiff Thor Ian Gensinger ("Gensinger") was confined at Century Correctional Institution ("Century") in Century, Florida. Gensinger alleges that on January 7, 2018,  five Defendants—James Bazzelle, Barney Cash, Roderick Yost, Thomas Laughman, and Justin Moye—used excessive force when they threw Gensinger to the ground, punched him on the head and face, and kicked him. (Doc. 11 at 7). Gensinger also alleges that Bazzelle and Laughman falsified three disciplinary reports, one of which resulted in Gensinger being found guilty of unauthorized use of drugs. (*Id.* at 8). Finally, Gensinger alleges that a sixth Defendant, Lisa Bermejo, fabricated facts underlying two disciplinary reports to retaliate against Gensinger for filing grievances against Bazzelle, Cash, Yost, Laughman, and Moye. (*Id.*).

### B.    Factual Background

The undersigned considers the facts in the light most favorable to Gensinger, as he is the non-moving party. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020).

---

make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

1.     *Eighth Amendment Excessive Force Claim*

In his verified amended complaint, Gensinger alleges that on January 7, 2018, at approximately 6:20 p.m., Laughman woke Gensinger and escorted him from his cell to the inmate bathroom area where "numerous officers were present."[2] (Doc. 11 at 7).  According to Gensinger, five of the six Defendants—Bazzelle, Cash, Yost, Laughman, and Moye—proceeded to beat him:

> I was instructed by SGT Bazzelle to "shut the fuck up." So I requested a Captain. SGT. Bazzelle, SGT Cash, SGT Yost, Officer Laughman and Officer Moye ordered me to the shower area behind the wall where SGT Bazzelle called me a "Pussy" and swung his closed right fist striking the left side of my face. I tried to jump the shower wall to escape but both Cash and Yost grabbed me from behind and threw me to the ground. I was then punched and kicked by these (5) officers repeatedly for several minutes until I was placed in handcuffs. After I was cuffed SGT Bazzelle ordered SGT Yost to sit me up and then he kicked me in the right side of the head with his left foot.  I fell back and again was beat, punched and kicked, by these (5) officers.  The captain and the camera operator arrived and the beating stopped.

(*Id*. at 7, ¶ 2).

At approximately 6:40 p.m., Gensinger was placed "on camera" and  "Sgt. Hathaway, Cash, and the captain" escorted Gensinger to "medical."[3] (*Id*. at 7). At approximately 6:45 p.m., a nurse (Nurse Treadway) bandaged Gensinger's forehead, which was bleeding. (*Id*.; Doc. 38-13 at 3-5). The nurse noted a bump and bruising

---

[2] Gensinger's verified amended complaint is treated as an affidavit for the purpose of summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019).

[3] Sergeant Hathaway is not a Defendant in this action.

in the center of Gensinger's forehead, and a small amount of dried blood. (Doc. 38-13 at 3-5). She also noted that there was no swelling, bruising or edema on Gensinger's front and back torso. (*Id*.). The "treatment provided" notes indicate that Gensinger's wounds were cleaned with saline, hydrogen peroxide, and an antiseptic, Betadine. (*Id*. at 3). The nurse also applied a bandage and ordered that neurological checks be conducted until Gensinger could be seen by a physician. (*Id.*). The Post-Use-of-Force Exam contains a "Diagram of Injury" which states "Description of injury: Edema, bruising, scant amt of dried blood to center of forehead: no other wounds noted." (*Id.* at 4).

On January 8, 2018, between 7:00 and 8:00 a.m., Dr. F. Witter examined Gensinger and noted injuries, such as "contusions, abrasions, bruising and swelling." (Doc. 38-13 at 1). Dr. Witter prescribed Ibuprofen or Tylenol for pain and ordered a follow-up in two days. (*Id*.). Gensinger was seen for a follow-up on January 10, 2018. (*Id*. at 2). At that appointment, Gensinger complained of blood in his stool and urine. (*Id*.). A nurse practitioner ordered a urinalysis to determine whether Gensinger's urine contained blood, and prescribed Ibuprofen as needed. (*Id*.). According to Gensinger, the urinalysis "was negative for any drugs in [his] system." (Doc. 11 at 8, ¶ 8).

### 2.    *Fourteenth Amendment Due Process Claim*

On January 8, 2018, Gensinger filed Emergency Grievance #1801-106-048 "at the institution" and Emergency Grievance #18-6-02494 "to Tallahassee." (*Id*. at 8, ¶¶ 9-10). After filing his grievances, on January 10, 2018, Bazzelle and Laughman issues three disciplinary reports regarding Gensinger—#106-180042, #106-180043, and #106-180044—which Gensinger claims contained false allegations. (Doc. 11 at 8, ¶ 12).

### 3.    *First Amendment Retaliation Claim*

On February 6, 2018, the FDC transferred Gensinger to Santa Rosa Correctional Institution. While there, on March 7, 2018, Defendant Lisa Bermejo "handcuffed [Gensinger] and had [him] placed in confinement for the same (2) D.R.'s [he] had at Century C.I. She advised [him] it was retaliation for the Century incident and told [him] 'let me see you get your tough ass out of this one.'" (*Id*.).

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260

(11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248.

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006).

### III.    Discussion

### A.    Excessive Force Claim Against Bazzelle, Cash, Yost, Laughman, and Moye

Defendants first argue that the District Court should grant summary judgment in their favor on Gensinger's excessive force claim because the force they used was reasonable and necessary. (Doc. 38 at 8-11).

Use of force by prison officials violates the Eighth Amendment's proscription against cruel and unusual punishments when the force is applied maliciously and sadistically for the very purpose of causing harm. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010) (per curiam); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim under the Eighth Amendment, a plaintiff must establish the following five elements:

(1) the defendant was acting under color of law;

(2) the defendant used force on the plaintiff;

(3) the force that the defendant used, viewed objectively, was "sufficiently serious" to violate the constitution;

(4) the defendant acted with a sufficiently culpable state of mind, that is, maliciously and sadistically for the very purpose of causing harm to the plaintiff; and

(5) the defendant proximately caused injury to the plaintiff.

*Wilkins*, 559 U.S. at 36-38; *Hudson v. McMillian*, 503 U.S. 1, 4, 7 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Whitley*, 475 U.S. at 320-21; *Sconiers*, 946 F.3d at 1265; *Petersen v. Smith*, 762 F. App'x 585, 592 (11th Cir. 2019).

### 1.    *Defendants Were Acting Under Color of State Law*

Bazzelle, Cash, Yost, Laughman, and Moye do not dispute that they were correctional officers employed by the Florida Department of Corrections ("FDC") at the time of the incident and that any interactions they would have had with Gensinger would be considered "under color of state law." (Doc. 38-1 at 1, ¶ 1; Doc. 38-2 at 1, ¶ 1; Doc. 38-3 at 1, ¶ 1; Doc. 38-4 at 1, ¶ 1; Doc. 38-5 at 1, ¶ 1). Gensinger, therefore, obviously can establish this first element.

### 2.    *Defendants' Use of Force*

Bazzelle, Yost, and Cash do not dispute that they employed force in dealing with Gensinger—although they disagree with Gensinger's claim that the force was excessive, and they argue that Gensinger's actions required them to apply force. (Doc. 38-1 at 2, ¶¶ 7 & 9; Doc. 38-2 at 2, ¶¶ 7 & 9; Doc. 38-3 at 1-2, ¶¶ 5-7). Thus, there is no question that Gensinger can establish that Bazzelle, Yost, and Cash used force on him.

Moye and Laughman, on the other hand, deny that they used force on Gensinger or were involved in the use of force. (Doc. 38-4 at 1, ¶ 4; Doc. 38-5 at 2, ¶¶ 7-8). Nevertheless, in his verified amended complaint and his verified response to Defendants' motion for summary judgment, Gensinger clearly alleges that Moye and Laughman used force on him. (Doc. 11 at 7, ¶ 2; Doc. 47 at 4). This may or may not be true, but a properly "verified" amended complaint is sufficient evidence to

create a genuine issue for trial on this element. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1305 n.23 (11th Cir. 2011) (verified pleadings may be treated as affidavits for purposes of summary judgment where the allegations are made based on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify on the matters stated). A genuine factual dispute exists on this element.

### 3.    *Objective Element: Sufficiently Serious Conduct*

To prevail in an excessive force case, a plaintiff must show that, as an objective matter, a defendant's actions were sufficiently harmful or serious to violate the Constitution. *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38. "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *See Wilkins*, 559 U.S. at 37-38 (internal quotation marks and citations omitted); *see also Samuels v. Hawkins*, 157 F.3d 557, 558 (8th Cir. 1998) (per curiam) (holding that throwing a cup of water at a prisoner was a *de minimis* use of force that did not amount to a constitutional violation).

Here, in his verified amended complaint, Gensinger alleges that Bazzelle, Cash, Yost, Laughman, and Moye beat and kicked him for no legitimate reason, and that these actions resulted in an injury to his forehead with bruising, swelling, and a small amount of blood. (Doc. 11 at 7, ¶ 2; Doc. 38-13; Doc. 47 at 1). Gensinger, therefore, has offered evidence indicating that Bazzelle, Cash, Yost, Laughman, and Moye employed force that involved more than a mere push or shove that caused no discernible injury. Viewed objectively, the alleged conduct is sufficiently serious to violate the Eighth Amendment. Gensinger's verified amended complaint, his affidavit, and his medical records sufficiently create a genuine issue of material fact with respect to this element.

### 4.    *Subjective Element: Culpable State of Mind*

To establish a claim of excessive force under the Eighth Amendment, a plaintiff also must establish that a defendant acted maliciously and sadistically for the very purpose of causing harm to the plaintiff. *Sconiers*, 946 F.3d at 1265; *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.

Gensinger's verified amended complaint alleges that Bazzelle, Cash, Yost, Laughman, and Moye punched and kicked him without justification and for the

purpose of causing harm. (Doc. 11 at 7, ¶ 2). Presuming this is true—as this court must at this stage—these allegations are sufficient to create a genuine factual dispute on this element. *See Moore v. Holbrook*, 2 F.3d 697, 700-01 (6th Cir. 1993) (holding that an inmate's allegations that he was handcuffed in his cell and then beaten by prison guards would constitute an Eighth Amendment claim); *Bogan v. Stroud*, 958 F.2d 180, 185 (7th Cir. 1992) (holding that beating and kicking an unarmed inmate is sufficient evidence to establish that the use of force was "for the very purpose of inflicting or causing harm").

### 5.    *Proximate Causation*

A plaintiff also must establish that a defendant was the proximate cause of the harm he suffered. *See Hudson*, 503 U.S. at 8 (noting that the Eighth Amendment is violated when prison guards "use force to *cause* harm") (emphasis added); *Petersen*, 762 F. App'x at 592 (observing that "to hold a defendant liable for excessive force, a plaintiff must prove causation"); *Delee v. Hanigan*, 729 F. App'x 25, 30 (2d Cir. 2018) (noting the proximate causation element of an excessive force claim under the Eighth Amendment). "A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation." *Troupe v. Sarasota Cty.*, 419 F.3d 1160, 1165 (11th Cir. 2005).

Here, Gensinger alleged in his verified amended complaint and his affidavit that Bazzelle, Cash, Yost, Laughman, and Moye punched and kicked him, which

directly caused physical injury to him. (Doc. 11 at 7, ¶ 2; Doc. 47 at 1). His affidavit also states that he suffered physical injuries from the beating he received from these Defendants. (Doc. 47 at 1). Medical records establish that Gensinger suffered physical injuries around the same time, which establishes a temporal connection sufficient to support causation. (Doc. 38-13 at 4-5). The evidence in the summary judgment record creates a genuine factual dispute on this element.

### 7. *Defendants Have Not Demonstrated the Absence of a Genuine Issue*

Bazzelle, Cash, Yost, Laughman, and Moye assert that summary judgment is appropriate in this case despite the conflicting evidence concerning material facts. (Doc. 38 at 8-11). In support of their argument, these Defendants cite an unpublished Eleventh Circuit case: *Smith v. Sec'y, Dep't of Corr.*, 524 F. App'x 511, 513-14 (11th Cir. 2013). But *Smith* is distinguishable from Gensinger's case in several respects:

- The type of force used in *Smith*—twisting the plaintiff's arm and pressing him against a wall—was held not to be objectively serious. *Id.* Here, as demonstrated above, Gensinger offered sufficient evidence to create a genuine issue as to this element. According to that evidence, Defendants did more than simply twist Gensinger's arm and pin him against a wall.

- In *Smith*, the plaintiff made inconsistent statements about the cause of his injuries. *Id.* But here, there is no evidence that Gensinger made inconsistent statements about the cause of his injuries.

- In *Smith*, unrefuted expert medical evidence established that the force employed by the prison guard likely did not cause the plaintiff's injuries. *Id.* No such medical evidence has been offered in Gensinger's case.

- In *Smith*, the court concluded that any use of force was *de minimis*. *Id.* In Gensinger's case, as demonstrated above, repeatedly punching and kicking an inmate—as Gensinger alleges—is not a *de minimis* use of force. *See Harris v. Chapman*, 97 F.3d 499, 505-06 (11th Cir. 1996) (holding that a plaintiff who had been kicked, beaten, choked with a towel, and slapped in the face endured more than a *de minimis* use of force).

- In *Smith*, the court concluded that there was no genuine issue of material fact. *Id.* As demonstrated above, Gensinger has submitted just enough evidence to create a genuine issue as to his excessive force claim.

Accordingly, the fact-specific holding of *Smith* does not apply to this case.

Essentially, Bazzelle, Cash, Yost, Laughman, and Moye ask this court to find that they are more credible than Gensinger. Credibility determinations, however, are impermissible at the summary judgment stage. *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006); *see Anderson*, 477 U.S. at 255 (stating that resolving contradictory testimony requires making credibility determination and weighing evidence, which are improper at summary judgment because they "are jury functions, not those of a judge"). Even if a "court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices." *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

Because Gensinger has shown that there are genuine issues of material fact as to his excessive force claim, Defendants are not entitled to summary judgment on this claim.[4]

## B.    Qualified Immunity for Bazzelle, Cash, Yost, Laughman, and Moye

Defendants Bazzelle, Cash, Yost, Laughman, and Moye also argue that summary judgment is appropriate on the basis of qualified immunity. (Doc. 38 at 14-15).

---

[4] On July 27, 2020, this court ordered Defendants to submit video recordings which the Defendants discussed in their motion for summary judgment and attachments to that motion. (Doc. 48). Defendants complied and filed multiple video recordings. Those recordings do not include any information that would entitle Defendants to summary judgment on Gensinger's excessive force claim.

To overcome an assertion of qualified immunity, a plaintiff must put forth evidence indicating that the official violated a statutory or constitutional right that was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If the official did not violate the law, the inquiry ends." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1200 (11th Cir. 2007). If the official did violate the Constitution, however, he is still entitled to qualified immunity if the right violated was not "clearly established" at the time of the violation. *McClish v. Nugent*, 483 F.3d 1231, 1248-49 (11th Cir. 2007).

To be "clearly established," the right had to have been "defined with specificity" prior to the alleged violation. *City of Escondido v. Emmons*, 586 U.S. __, 139 S. Ct. 500, 503 (2019) (per curiam). "For the law to be 'clearly established,' case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. __, 138 S. Ct. 577, 590 (2018).

Here, the parties do not contest that Defendants were acting within the scope of their discretionary authority to maintain the care, custody, and control of Gensinger. Defendants also do not dispute that the constitutional right at issue here—the Eighth Amendment right of a prisoner to be free from the use of excessive force by prison guards—was clearly and sufficiently established by January 2018. *See Wilkins*, 559 U.S. at 40; *Whitley*, 475 U.S. at 320-21; *Hudson*, 503 U.S. at 6-7; *Johnson*, 280 F.3d at 1321-22.

Defendants contend, however, that Gensinger has not set forth sufficient evidence to create a genuine issue of material fact regarding the alleged violations of his rights. As the discussion set forth above demonstrates, a reasonable jury could find that Bazzelle, Cash, Yost, Laughman, and Moye violated Gensinger's constitutional rights by employing excessive force. Accordingly, Defendants Bazzelle, Cash, Yost, Laughman, and Moye are not entitled to qualified immunity on Gensinger's Eighth Amendment claim for excessive force.

## C.    <u>More Than a *De Minimis* Injury</u>

Defendants also seek summary judgment on Gensinger's claim for compensatory and punitive damages, arguing that Gensinger's *de minimis* injuries do not qualify for such relief. (Doc. 38 at 16).

The Prisoner Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (1996) ("PLRA"), was enacted "[i]n an effort to stem the flood of prisoner

lawsuits in federal court." *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc). Part of the PLRA has been interpreted to preclude inmates from recovering compensatory and punitive damages for lawsuits claiming constitutional violations when filed while the inmate is in custody, unless the inmate-plaintiff suffered a physical injury or a sexual assault. *See* 42 U.S.C. § 1997e(e); *see Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011); *Harris*, 216 F.3d at 984-85. The relevant provision states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Section 1997e(e) precludes an award of compensatory or punitive damages in relevant cases when there was no physical injury or the commission of a sexual act, or when any injury was *de minimis. Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015); *Al-Amin*, 637 F.3d at 1199.

To survive a motion for summary judgment on the basis of § 1997e(e), a plaintiff must establish that he was the victim of a sexual act or a physical injury that was more than merely a *de minimis* one. *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis.*"); *see Thompson*

*v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 (11th Cir. 2014) (citation omitted); *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). The requisite physical injury "need not be significant but must be more than *de minimis.*" *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *see Logan v. Hall*, 604 F. App'x 838, 840 (11th Cir. 2015) ("we have held that the injury need not be significant"); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (holding that the physical injury required by § 1997e(e) "need not be significant" but "must be more than *de minimis*").

There is "no consensus for how to determine when a physical injury is 'greater than de minimis.'" *Thompson v. Smith*, 805 F. App'x 893, 904 (11th Cir. 2020); *Chatham v. Adcock*, 334 F. App'x 281, 284 (11th Cir. 2009). There certainly is no "bright line" test for whether an injury is *de minimis*; instead, it is a fact-intensive inquiry. But an injury certainly would be *de minimis* if it entailed only "a routine discomfort associated with confinement." *Thompson*, 805 F. App'x at 904 (citing *Alexander v. Tippah Cty.*, 351 F.3d 626, 631 (5th Cir. 2003); *Harris*, 190 F.3d at 1287).

Fleeting pain or mere discomfort is insufficient to meet the "physical injury" standard of § 1997e(e). *Dixon*, 225 F. App'x at 799; *Oliver*, 289 F.3d at 629 (holding that back and leg pain allegedly caused by an overcrowded cell was insufficient to satisfy the physical injury requirement because by the inmate's own admission it was "nothing too serious"). Likewise, minor cuts and bruises are typically *de*

*minimis* physical injuries. *See, e.g.*, *Dixon*, 225 F. App'x at 799 ("[M]ere bruising from the application of restraints is only a *de minimis* injury."); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n.4 (11th Cir. 2000) (bruises received during an arrest were non-actionable *de minimis* injury); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) (holding that a forced "dry shave" was a *de minimis* injury); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (noting that "a sore, bruised ear lasting for three days" was a *de minimis* injury).

However, injuries which cause bleeding, swelling, cuts, and bruising can be considered more than *de minimis*. *See, e.g.*, *Hudson*, 503 U.S. at 10 (holding that bruises, swelling, loosened teeth, and a cracked dental plate more than a *de minimis* injury to support Eighth Amendment violation); *Johnson*, 280 F.3d at 1312 (holding that a head injury which caused swelling and seizures, along with cuts and bruises to the face, shoulders, and upper back, were was more than *de minimis* injuries).

Gensinger's verified amended complaint contends that he suffered "swelling," "contusions, abrasions, bruising, and a split forehead." (Doc. 11 at 8-9, ¶¶ 7, 26). Gensinger claims that following the alleged beating, he had blood in his urine, blood in his feces, he exhibited bruising, and he continued to experience pain. (*Id.* at 9, ¶ 26; Doc. 38-13 at 2). Furthermore, the Post-Use-Of-Force Exam summary states that Gensinger complained of pain in his "forehead, rib cage (bilateral), back." (Doc. 38-13 at 3). The summary confirms at least some of Gensinger's reported injuries. It

states: "Center of forehead bump [with] bruising & scant amt of dried blood." (*Id.*). The Post-Use-Of-Force Exam also describes his forehead injury as a "wound" and an "edema." (*Id.* at 3-4). The discharge instructions include directions for Gensinger to be seen by "HCP" (Health Care Professional) the following morning, for staff to conduct neurological assessments every 4 hours and monitor Gensinger's pulse, and for staff to notify a doctor as needed. (*Id.*). Medical personnel prescribed pain medication for Gensinger.  (Doc. 11 at 8, ¶ 7).

Gensinger's Chronological Record of Health Care indicates that Dr. Witter examined him on January 8, 2018. (*Id.* at 1). Although Dr. Witter's handwriting is nearly impossible to decipher, he writes "abrasion/contusion" and "head wound from PUOF." (*Id.*). On January 10, 2018, Gensinger's Chronological Record of Health Care indicates that he complained of blood in his urine and stool "since Monday" as well as generalized pain. (*Id.* at 2).

Section 1997e(e) is an affirmative defense. *See Douglas v. Yates*, 535 F.3d 1316, 1320-21 (11th Cir. 2008) (holding that § 1997e(e) is an affirmative defense and not a jurisdictional limitation). Defendants have the burden of demonstrating the applicability of an affirmative defense and establishing all of its elements. *See Whatley v. Smith*, 802 F.3d 1205, 1209 (11th Cir. 2015); *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Defendants have not demonstrated that there is no genuine factual dispute with respect to this affirmative defense. Because the

evidence before this court, construed in the light most favorable to Gensinger, could cause a reasonable jury to find that Gensinger's injuries were more than *de minimis*, Defendants are not entitled to summary judgment with respect to compensatory and punitive damages under § 1997e(e).

### D.   <u>Due Process Claim for Issuing Allegedly False Disciplinary Reports</u>

Bazzelle and Laughman also move for summary judgment on Gensinger's claim that Bazzelle and Laughman deprived him of due process by falsifying three disciplinary reports. (Doc. 38 at 11-12).

#### 1.   *Background Regarding the Three Disciplinary Reports*

Gensinger alleges that Bazzelle and Laughman falsified three disciplinary reports: 106-180042, 106-180043, and 106-180044. (Doc. 11 at 8, ¶ 12). Gensinger, however, did not develop this claim with respect to two of these disciplinary reports (106-180042 and 06-180044).

<u>**106-180042:**</u>  In his verified amended complaint, Gensinger devotes less than a single sentence to this disciplinary report:  "1-10-18 – I received (3) falsified D.R.'s: # 106-180042, #106-180043, and #106-180044 from Bazzelle and Laughman." (*Id.*). Gensinger has failed to state how he suffered an injury in fact with respect to disciplinary report 106-180042. He, therefore, has failed to state a due process claim with respect to this disciplinary report.

**106-180043:** According to Laughman, on January 7, 2018, he observed Gensinger exhibit "erratic behavior such as slurred speech, slow response to questions, swaying while sitting on his bunk, and blood shot eyes." (Doc. 38-5 at 1, ¶ 4; Doc. 38-10 at 1). Laughman believed that Gensinger was inebriated, and therefore issued disciplinary report 106-180043, which charged Gensinger with "unauthorized use of drugs." (Doc. 38-5 at 1, ¶ 5; Doc. 38-10 at 1). On January 23, 2018, a disciplinary hearing was held, and the disciplinary hearing team found Gensinger guilty and sentenced him to disciplinary confinement for 15 days. (Doc. 38-10 at 3).

**106-180044:** Gensinger alleges that this disciplinary report charged him with possession of narcotics, but that the FDC dismissed it, allegedly because it was "falsified." (Doc. 11 at 8, ¶ 19). Gensinger provided no additional information about this disciplinary report. Gensinger has failed to state how he suffered an injury in fact with respect to this disciplinary report. He, therefore, has failed to state a due process claim with respect to this report.

## 2. *Lack of a Protected Liberty Interest that Warranted Due Process*

The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property, without due process of law." U.S. Const.

amend. XIV. "Whether an inmate has a protected liberty interest that would entitle him to due process 'is often a difficult determination in the context of a prison, because prisoners have <u>already</u> been deprived of their liberty in the ordinary sense of the term.'" *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999)). In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court provided the "test for determining whether a convicted inmate has a protected liberty interest." *Jacoby*, 835 F.3d at 1346. "This test examines the hardship imposed on the inmate relative to the 'basic conditions' of prison life." *Id.* at 1346-47 (quoting *Sandin*, 515 U.S. at 485). Pursuant to this test, "a convicted inmate is entitled to procedural due process in two circumstances." *Id.* at 1347. "First, he is entitled to a measure of procedural due process when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id.* (quoting *Sandin*, 515 U.S. at 484). Second, the inmate "is entitled to a measure of procedural due process when a change in his conditions of confinement 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484).

In *Sandin*, "the Supreme Court held that placing a convicted inmate in segregated confinement for thirty days as discipline was not 'a dramatic departure from the basic conditions of [the inmate's] determinate sentence.'" *Id.* (quoting

*Sandin*, 515 U.S. at 485). Requiring an inmate to serve 30 days in disciplinary confinement did not give rise to a protected liberty interest because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485. Accordingly, the Court determined that the inmate "was not entitled 'to the procedural protections" set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), "before being placed in segregation." *Jacoby*, 835 F.3d at 1347 (quoting *Sandin*, 515 U.S. at 487). "Said another way, convicted inmates have *no right to a due process hearing* before being punished for disciplinary infractions unless the punishment is demonstrably harsher than the ordinary conditions of prison life." *Jacoby*, 835 F.3d at 1347 (emphasis added).

Here, as a result of disciplinary report number 106-180043, Gensinger was sentenced to 15 days in disciplinary confinement.[5] (Doc. 38-10 at 3). Gensinger has offered no evidence indicating that his time in disciplinary confinement represented a "dramatic departure from the basic conditions" of his sentence. *See Sandin*, 515 U.S. at 485, 486 (holding that 30 days of administrative confinement was not an atypical and significant hardship); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th

---

[5] Plaintiff does not allege in his verified complaint that he lost gain time as a result of disciplinary report 106-180043, nor does he point this court to any evidence in the record that supports such a conclusion. *See Wolff*, 418 U.S. at 539 (holding that prisoners may not be deprived of statutory "good-time credits" without due process.).

Cir. 1998) (holding that 60 days of administrative confinement as a result of an allegedly false disciplinary report was not an atypical and significant hardship); *see also Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) ("[T]he Due Process Clause does not directly protect an inmate from changes in the conditions of his confinement, . . . as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed upon him. . . .").

Accordingly, because Gensinger's disciplinary confinement did not entail an atypical and significant hardship, Gensinger did not possess a liberty interest entitling him to procedural due process. For this reason alone, as a matter of law, Laughman is entitled to summary judgment on Gensinger's due process claim.

**E.    First Amendment Retaliation Claim against Defendant Bermejo**

Defendant Lisa Bermejo also moved for summary judgment on Gensinger's First Amendment claim of retaliation. (Doc. 38 at 12-14).

**1.    *Background Regarding Two Disciplinary Reports Issued by Bermejo***

Gensinger alleges that on February 6, 2018, almost one month after he allegedly was beaten by Bazzelle, Cash, Yost, Laughman, and Moye, the FDC transferred Gensinger to Santa Rosa Correctional Institution. (Doc. 11 at 8, ¶ 20). While there, on March 7, 2018, Defendant Lisa Bermejo allegedly handcuffed Gensinger and had him placed in confinement for the "same two" disciplinary

reports he faced while at Century. (*Id.* at 8, ¶ 22). Gensinger alleges that Bermejo informed him that this was "retaliation for the Century incident." (*Id.*). In support of her motion for summary judgment, Bermejo provided the two disciplinary reports and records from the disciplinary hearings. (Doc. 38-11 at 1-10; Doc. 38-12 at 1-9). Gensinger has not disputed the accuracy of these materials.

**119-180589:** In this disciplinary report, Bermejo alleged that on March 7, 2018, she searched Gensinger's property and discovered "K2/Spice." (Doc. 38-11 at 1). She charged Gensinger with possession of a stimulant or depressant. (*Id.*). On March 15, 2018, a disciplinary team found Gensinger guilty and sentenced him to 52 days of confinement. (*Id.* at 3).

**119-180590:** In this disciplinary report, Bermejo alleged that on March 7, 2018, she observed Gensinger stumbling and falling over. (Doc. 38-12 at 1). She asked Gensinger what was wrong.  Bazzelle alleged that Gensinger both could not speak, but that he was slurring his words. (*Id.*) Gensinger appeared to be under the influence of "an unknown substance," and Bazzelle charged him with use of unauthorized drugs. On March 15, 2018, a disciplinary team found Gensinger guilty and sentenced him to 52 days of confinement. (*Id.* at 3).

## 2.   *Retaliation Claim Under the First Amendment*

 "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "An inmate may maintain a cause of action for retaliation under 42 U.S.C. § 1983 by showing that a prison official's actions were 'the result of [the inmate] having filed a grievance concerning the conditions of his imprisonment.'" *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (quoting *Farrow*, 320 F.3d at 1248).

In order to "establish a First Amendment retaliation claim, a prisoner need not allege the violation of a separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." *Id.* "To prevail on a retaliation claim, the inmate must establish that: '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].'" *Id.* (citing *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008)).

A prisoner, however, "cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report *and* there is evidence to sustain the conviction." *Id.* at 1215

(emphasis added) (citing *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008)). Accordingly, "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and* there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in the disciplinary report." *Id.*; *see Hartsfield*, 511 F.3d at 829.

### (a)    The FDC Afforded Gensinger Due Process

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court "outlined the specific hearing procedures that prison disciplinary panels must comply with to satisfy the standards of procedural due process in the prison setting." *O'Bryant*, 637 F.3d at 1213. The Court "instructed that prisoners must receive (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action." *Id.* at 1213 (citing *Wolff*, 418 U.S. at 563-67).

**119-180589:** With respect to disciplinary report 119-180589, the record establishes that the FDC complied with the requirements of *Wolff*. Gensinger received detailed written notice of the charges against him, and of his rights during the investigation and hearing. (Doc. 38-11 at 1, 3) (Inmate notification of D.R. #

119-180589 delivered on 3/9/18 at 12:50 p.m. and the disciplinary team made its findings, with Gensinger present, on 3/15/2018). Gensinger had the opportunity to present evidence and witnesses, as stated in the notice provided before his disciplinary hearing. (Doc. 38-11 at 1-3). Gensinger also received a written statement of the findings against him and the evidence relied upon by the disciplinary panel. (Doc. 38-11 at 2-3). Furthermore, Gensinger received various protections not mandated by *Wolff*, such as the right to request staff assistance and to appeal the panel's decision. (Doc. 38-11 at 2-3).

**119-180590:** The record establishes that the FDC likewise complied with the requirements of *Wolff* as they related to disciplinary report 119-180590. Gensinger received detailed written notice of the charges against him, and of his rights during the investigations and hearings. (Doc. 38-12 at 1, 3) (Inmate notification of D.R. # 119-180590 delivered on 3/9/18 at 12:48 p.m. and the disciplinary team made its findings, with Gensinger present, on 3/15/2018.). Gensinger had the opportunity to present evidence and witnesses, as stated in the notice provided before his disciplinary hearings. (*Id.* at 1-3). Gensinger also received written statements of the findings against him and the evidence relied upon by the disciplinary panel. (*Id.* at 2-3).  As was the case with disciplinary report 119-180589, Gensinger received protections not mandated by *Wolff*, such as the rights to request staff assistance and to appeal the panel's decision. (*Id.*).

Accordingly, with respect to both disciplinary reports issued by Bermejo, the FDC afforded Gensinger due process, and Gensinger did not dispute this in his verified amended complaint, his affidavit, or his response to Defendant's motion for summary judgment.

### (b)    Sufficient Evidence Supports the Panel's Finding of Guilt

As discussed above, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *O'Bryant*, 637 F.3d at 1215 (quoting *Hartsfield*, 511 F.3d at 829). The Eleventh Circuit has made clear that "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process *and there was evidence to support the disciplinary panel's fact finding*, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *Id.* "Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." *Id.* "To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction *after* having filed a grievance." *Id.* at 1215-16.

**119-180589:** With respect to disciplinary report 119-180589, the disciplinary panel noted the factual basis for its finding of guilt:

Based in part upon the written statement of [Defendant] Bermejo and the completed investigation of 3/12/18, Inmate Gensinger, Thor DC# 165522 was guilty of 3-7 possession of aromatic stimulants or depressants. When while [sic] supervising the search of inmate Gensinger's property, when [sic] a white folded piece of paper was discovered. Inside the paper was a leafy substance which appeared to be K2 spice. Inmate appeared for the hearing but provided no additional evidence to refute the charge. All witness statements were read aloud, reviewed and considered. All photographic evidence was reviewed and considered. All camera evidence was reviewed and considered. Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmate's statement.

(Doc. 38-11 at 3).

The written statement of Defendant Bermejo described the incident as follows:

I was assigned to Santa Rosa Correctional Institution main unit as the A-Dorm supervisor. At approximately 1:30PM I was supervising the search of inmate Gensinger's property at A-2147S, when a white folded piece of paper was discovered. Inside the paper was a leafy substance which appeared to be K2 spice. Photos were taken. The substance was placed in the DR evidence locker.

(*Id.* at 1). Attached to disciplinary report 119-180589 is a black and white photograph of a folded piece of paper with what appears to be the leafy substance discussed in Bermejo's statement. (*Id.* at 5). Accordingly, it is clear that "there was evidence to support the disciplinary panel's fact finding." *O'Bryant*, 637 F.3d at 1215.

**119-180590:** With respect to disciplinary report 119-180590, the disciplinary panel noted the factual basis for its finding of guilt:

Based in part upon the written statement of [Defendant] Bermejo and the completed investigation of 3/12/18, Inmate Gensinger, Thor DC# 165522 was guilty of 9-27 use of unauthorized drugs. When he began stumbling around in alpha wing two bathroom and started to fall over. Inmate was moved into the alpha dormitory laundry room and asked what was wrong. Inmate Gensinger couldn't speak and was slurring his words. Inmate appeared for the hearing but provided no additional evidence to refute the charge. All witness statements were read aloud, reviewed and considered. All photographic evidence was reviewed and considered. All camera evidence was reviewed and considered. Based upon review of the identified tape or the capabilities of the particular taping equipment, the tape requested does not provide evidence to support the inmate's statement.

(Doc. 38-12 at 3).

Defendant Bermejo's written statement provided:

On March 7, 2018 I was assigned as the alpha dormitory sergeant at Santa Rosa Correctional Institution – Main Unit on B-Shift. At approximately 1:20 PM, inmate Gensinger began stumbling around in alpha wing two bathroom and started to fall over. I moved Inmate Gensinger into alpha dormitory laundry room. I asked inmate Gensinger what was wrong. Inmate Gensinger couldn't speak and was slurring his words. Inmate Gensinger appeared to be under the influence of an unknown substance.

(*Id.* at 1).

The record clearly indicates that there was sufficient evidence to support the disciplinary panel's factual findings. Because there is no dispute that the disciplinary panel had a sufficient factual basis to find Gensinger guilty of the disciplinary reports issued by Bermejo, Bermejo is entitled to summary judgment on Gensinger's First Amendment retaliation claim.

## IV.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendants' Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

2.    Summary judgment should be **DENIED** regarding Gensinger's Eighth Amendment claim for excessive force against Defendants James Bazzelle, Barney Cash, Roderick Yost, Thomas Laughman, and Justin Moye.

3.    Summary judgment should be **GRANTED** in favor of Defendant Thomas Laughman regarding Gensinger's Fourteenth Amendment due process claim.

4.    Summary judgment should be **GRANTED** in favor of Defendant Lisa Bermejo regarding Gensinger's claim of retaliation under the First Amendment.

5.    The clerk of the court be directed to update the docket to reflect that the only remaining Defendants are Bazzelle, Cash, Yost, Laughman, and Moye.

6.    The District Court recommit this case to the undersigned magistrate judge to prepare the case for trial.

At Panama City Beach, Florida, this <u>10th</u> day of August, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**